SILAS B. HAZELTINE vs. SENECA PAGE, trustee of ELIJAH PARKER.

FRANKLIN,
January,
1832.

This Court cannot reverse the decision of the county court in trustee actions, up-
on matters arising between the creditor and trustee, unless the facts are all placed
upon the record in the county court, by a bill of exceptions, or otherwise.

It makes no difference in this respect, whether the action comes up by appeal, or
by exceptions to the decision of the county court.

Exceptions should be drawn and signed by the judges, stating, that they found
the facts as stated in the disclosure, or found such to be the facts, stating them, and,
upon such facts, decide in favor of such a party.

The Supreme Court are no more judges of the weight of evidence in such actions
than they are upon any writ of error.

A trustee of an absconding debtor will not be protected by a previous judgement
against him in that capacity, when said judgement is to be satisfied in specific prop-
erty, and cannot be enforced till a future time, and the monies or credits in the
trustee's hands are due immediately.

Neither will a trustee be protected by having promised to pay the amount of his in-
debtedness to the creditors of the absconded debtor, if such promise be void by the
statute of frauds.

This case was a trustee process brought by *Hazeltine* against
*Page*, as the trustee of *Parker*, who was alleged to be an abscon-
ded or concealed debtor. The suit was commenced Decem-
ber 20th, 1828. It appeared from the disclosure of the trustee

FRANKLIN,
January,
1832.

Hazeltine
vs.
Page, trustee
of Parker.

that in the fore part of October, 1827, he executed and delivered to *Parker* a promissory note for nine hundred dollars, payable in five years after date in horses, or other property, such as *Page* could best spare; that afterwards, on the 9th day of the same month, *Hazeltine* caused process to be served on him as the trustee of *Parker*, and on the 10th day of the same month, David Read also commenced a trustee process against him as *Parker's* trustee; that these suits were both entered in court, and were pending at the time of said disclosure, and in both of which the trustee had, on the 13th day of December, 1828, filed disclosures stating that the promissory note before mentioned was due to *Parker* according to its tenor. The said *Page* further disclosed, that after the commencement of the two suits last mentioned, and before the commencement of the present action, he, at the solicitation of *Parker*, and relying on his promise to settle the first suits, made a settlement with *Parker*, and took up and paid the said note for nine hundred dollars, excepting a balance, for which *Page* gave his note to *Parker* for one hundred pairs of coarse shoes, payable on demand, and another note for either forty or seventy dollars, (which sum he could not ascertain,) payable in boots and shoes on demand;—that after said settlement, and the execution of these two notes, and before the commencement of the present action, he, *Page*, became answerable to pay to Elijah Barnes forty dollars, if the title to certain lands which *Parker* had sold to Barnes, should fail; also to Read and Beardsley six or seven dollars; to Augustus Burt the amount of his charges as attorney in the two suits above mentioned; to Mr. Stowell about six dollars, and to Smalley and Adams the amount of their fees as attornies in the said two suits, if he should have any funds after paying the other debts specified; the amount to be paid to Burt, and to Smalley and Adams could not be then assertained, as the two suits were not terminated. All these sums the trustee stated he had agreed to pay at the request of *Parker*. *Page* further stated in his disclosure, that he had a further claim against *Parker* for his costs as trustee in the two first suits, and for money paid counsel in the same, amounting to $14,50. It appeared that the agreement to pay these several sums was not reduced to writing, excepting the agreement to pay Barnes, as before mentioned. At the trial in the county court at September term, 1831, it appeared that judgements had been rendered against *Page* in the two suits before mentioned, according to his disclosure, in the one in which *Hazeltine* was plaintiff, for $5,32 damages and $5,32 costs, and

FRANKLIN,
January,
1832.

Hazeltine
vs.
Page, trustee
of Parker.

in the other for $54,08 damages and $18,15 costs. The cause was tried on the disclosure and other evidence, and a judgement was rendered in favor of the plaintiffs. Page, the trustee, excepted, and the following bill of exceptions was allowed, on which the cause was brought before this Court for revision.

"In addition to, and explanation of, the disclosure in this case, the proceedings and disclosures in the former suits against Page, as trustee of Parker, and mentioned in the disclosure in this suit, were read in evidence. In order to show that the liability of the trustee to Barnes, set forth in the disclosure, had ceased, the plaintiff read in evidence the record of a mortgage discharged, executed by Barnes to Parker, which was the incumbrance against which the trustee had undertaken to indemnify Barnes, as mentioned in the disclosure. It was proved that sometime previous to the commencement of this suit, Parker employed Burt, as counsel, in the two suits of Hazeltine and Read against Page, as trustee of Parker, mentioned in the disclosure, telling Burt that Page would pay his fees; that within a short time after, and previous to this suit, Burt enquired of Page if he would be accountable, and he agreed to stand charged for Burt's services in the said two suits. Whereupon the charges already made were transferred by Burt to the account of Page, and all subsequent charges in said suits were made by Burt directly against Page. It was further proved that Smalley and Adams were counsel for Parker in the same suits, and in this suit, but that their charges were made against Parker alone, and had never been transferred to the account of Page, nor had he ever undertaken in writing to be accountable for the same. Evidence was given as to the value of coarse shoes. Upon the disclosure and evidence, the court decided that the trustee was not entitled in this case to any deduction on account of the two former suits in favor of Hazeltine and Read, on the ground that the disclosure was too general and unsatisfactory as to the manner of satisfying the nine hundred dollar note, and as to the undertaking of Parker to satisfy the judgements against the trustee ; nor on account of his undertaking to Barnes, on the ground that the claim of Barnes was extinguished by the discharge of the mortgage aforesaid ; nor on account of his undertaking to Smalley and Adams, on the ground that said undertaking was void, at least, as against an attaching creditor, by the statute of frauds. And the court further found the value of the shoes to be one hundred and seventeen dollars, and the sum due on the trustee's second note to Parker to be forty dollars, making in the whole one hunderd and fifty-seven dollars. The court further considered from the disclosure, that this sum was already due and payable. From this sum the court deducted and allowed to the trustee the payment to Read and Beardsley of six dollars, the payment to Stowell of six dollars, the amount of Augustus Burt's account, found from the evidence to be fifty dollars ; making in all

FRANKLIN,
January,
1832.

Hazeltine
vs.
Page, trustee
of Parker.

the sum of sixty-two dollars, leaving the trustee liable for ninety-five dollars.    Out of this sum the court allowed to the trustee for his own time and travel, and attending court, seven-dollars and sixty cents.    And for the fees and disbursements of his counsel in this suit twenty-two dollars fifteen cents; making together twenty nine dollars and seventy-five cents: which sum being deducted from the aforesaid amount of his liability left the sum of sixty five dollars and twenty-five cents, which was adjudged to be in the hands of the trustee subject to the plaintiff's execution.    To all which the trustee excepts."

*Smalley and Adams, for defendant.*—1 The amount of the judgement in the two first suits against *Page* ought to have been deducted from the sum found in *Page's* hands, in addition to the sum deducted by the county court.    The plaintiff is not entitled to draw from *Page's* hands any sum of money or other property, unless *Parker* could have drawn the same from *Page* at the time of the commencement of this action.    A short examination of this case, as exhibited by the papers, will show that *Parker* was not entitled, either in law or equity, to draw any funds from *Page's* hands at the time of the commencement of this suit, until he had settled the two suits then pending against *Page* as his trustee.

2. This case has nothing to do with the statute of frauds.    The statute does not prohibit, restrain, or limit, or in any way qualify, the right which a creditor has to direct his debtor to pay to whomsoever the former sees fit.    Nor are the obligations of the debtor-intended to be affected by the act.— *G***** vs. Philips, et al.* 10 *Johns*, 412 ; *Com. Contracts*, 181, *and the authority there cited.*    The engagement of *Page* to pay for the services of Mr. Burt and Smalley and Adams, *Parker's* counsel, was nothing more than a mode of paying his own debt.--*Roberts on Frauds*, 208 and seq, 224, 232.    Unless this undertaking can be brought within the statute of frauds, there was error in the decision of the county court.    The fact that Smalley and Adams did not charge to *Page*, is sufficiently explained by the disclosure. He was not to pay their charges unless the funds should hold out,

3. The decision of the county court, that the sum found in *Page's* hands was now due and payable in cash, is clearly erroneous.

*Read, for the plaintiff.*—1. It appears from the disclosure made by *Page* in the two suits referred to in his last disclosure, that there was $900 due from him to *Parker* at the commencement of said suits ; and further, that but about $70 was recover-

FRANKLIN,
January,
1832.

Hazeltine
vs.
Page, trustee
of Parker.

ed in said suits against the principal debtor. The statute (sec. 5) relating to absconded or concealed debtors, (see stat. 151,) is peremptory on this subject, and makes the trustee liable for the full amount of the debt, if he had sufficient funds or property in his hands at the time of the service of the process ; and if he shifts or varies the condition of the property, or pays up the principal debtor, relying upon his responsibility to meet the judgements that might be recovered against him, it can in no way affect or vary the rights of the attaching creditor. Further, the burthen of proof is on the trustee as to the true state of the funds in his hands; and if he does not clearly state their condition or manner of disposal in his disclosure, as becomes his duty, all legal presumptions will be taken against him ; and how much *Page* had paid towards the $900 note, or in what manner the same was settled, was matter of fact for the court below to determine.

2. Whether the claim in favor of Barnes should have been deducted or not, rested also upon matter of fact which the court below have decided, and which this court will not attempt to review. The same as to whether said notes were due and payable.

3. The decision of the court in not deducting the claim in favor of Smalley and Adams against *Parker*, was correct, as the undertaking on the part of *Page* furnished them with no legal claim against him to recover the same ; but, on the other hand, was void under the statute of frauds.—See *Stat.* 115 ; *Rob. on Frauds*, 207–8 ; *do.* 222–3.

HUTCHINSON, C. J., delivered the opinion of the Court.— There appears to be not much in controversy in the present case, except what depends upon the weight of evidence ; and we have no more to do with that, than we should have in any writ of error. And, in this respect, there is no difference, whether the action comes up by appeal, or by exceptions to the decision of the county court. We can hold appellate jurisdiction from the county court only to revise their decisions upon matters of law, arising from the facts, in some way placed upon the record. If the disclosure of the trustee is treated as true, let the judges certify, that they found the facts to be as stated in the disclosure. If there is other testimony, also, let them certify, in detail, what facts they find proved by the disclosure and other testimony. The disclosure itself may be so defective and incoherent, that no person can believe all the facts it contains. And, while we admit other testimony, either to contradict or support the disclosure, as

FRANKLIN,
January,
1832.

Hazeltine
vs.
Page, trustee
of Parker.

ever has been done in this state, we must treat the disclosure rath-
er as evidence, than as a record document.    Still, if it appears
consistent in and of itself, and stands uncontradicted by other tes-
timony, it is treated as containing the truth.    Yet, as the other
testimony is not always on paper, we know not whether the coun-
ty court treated it as true or not, without their certificate upon the
subject.    In the present case, the exceptions allowed show what
facts they found proved, and the decision they made upon those facts.
And the defendant now urges that the facts thus found require a
decision, that *Page* might retain out of the two notes, last given by
him, sufficient to indemnify him against the two suits named in
his disclosure ; also that he should be allowed the sum he agreed
to pay to Smalley and Adams, being their debt against *Parker*,
the principal debtor.    If we treat the facts upon these points as
the defendant conceives they must have been found, and even treat
the disclosure as true upon these points, still we must bear in mind
that the two last notes, which the county court valued at one hun-
dred and fifty seven dollars, were not left in the hands of *Page* as
a fund to pay the previous judgements : but it was made payable
immediately ; and at most, *Page* only took the promise of *Parker*
to indemnify him against those judgements.    Now those judge-
ments could not take effect against *Page* till 1832-3—and then
they might be satisfied in horses, &c.    Of course, this promise
could not be pleaded in offset, or set up in any way against the
collection of the new notes.    Nor would a court of equity interfere,
even as against *Parker*, to stay the collection, on account of that
executory promise.    It would be necessary to show the inability
of *Parker* to fulfil the promise.    Nothing of this sort appears
here.    And does it follow, that an attaching creditor of *Parker* is
to be restrained—even if *Parker* would be ?    So long as the right
of *Parker* to the $157, is a legal right, is not that enough for a
creditor ?—Why is this different from the case of specific chattels
belonging to *Parker* in the hands of *Page*—not deposited there
as a pledge against the promise of *Parker*—but to be redelivered
when called for.    A creditor goes and attaches that property ;
shall his execution be prevented on account of that promise ?    As
to the debt of Smalley and Adams, and the application of the
statute of frauds ; no debt of *Page* to *Parker*, or of *Parker* to
Smalley and Adams, is discharged by the verbal promise of *Page*
to Smalley and Adams, unless the promise *ipso facto* operates to
discharge those debts.    But the account of Smalley and Adams
was continued against P*arker* : thus rebutting the presumption of

FRANKLIN,
January,
1832.

Hazeltine
vs.
Page, trustee
of Parker.

its discharge as against *Parker.*—*Vide Livingston* vs. *Wilkinson, Sup. C. F. C. January T.* 1828. No new consideration passed between Smalley and Adams and defendant. It is not like *Williams* vs. *Leaper* in *Burrow.* To make it similar, Smalley and Adams should have been about to attach the property of *Parker* in *Page's* hands—then *Page's* promise (with the assent of *Parker,* and perhaps without it) to pay their debt, in consideration of withdrawing their attachment. If not within the statute—is the promise grounded on any sufficient consideration ? To make a consideration, was it not necessary that *Page's* promise should have been accepted *in satisfaction* of *Parker's* debt?—*Page's* authority under *Parker* was to *pay* the debt to Smalley and Adams, and not to embarrass the property of *Parker* by making a collateral engagement short of extinguishing the debt as against *Parker.* The court made the proper distinction between this claim of Smalley and Adams, and that due to Mr. Burt. Burt had accepted *Page* as his debtor, and charged him, and discharged *Parker.* The county court allowed *Page* to retain that amount.

The defendant has urged one further objection ; that the court were not warranted in adjudging *Page* as trustee of the *monies* of *Parker,* when one note was merely for so many pairs of shoes. The exceptions show, that the court found, from the disclosure, that the note payable in shoes had become due and payable. Hence they set a value upon the shoes, and considered that value to be money in his hands. Were it our province to decide upon the evidence, we should consider it as well warranting the decision of the county court. The note for shoes was payable on demand. The disclosure states his undertaking to pay divers money debts on account of it, to nearly its value, and says the remainder is due. If, by its being due, might not be intended that it was payable, yet his undertaking to pay so many money debts, well warranted the presumption that the shoes had been demanded, and the note become payable in money.

The judgement of the county court is affirmed.

*Smalley & Adams,* for the trustee.

*Read,* for the plaintiff.